v. Shulkin v. Shulkin v. Shulkin v. Shulkin v. Shulkin v. Shulkin v. Shulkin v. Shulkin v. Shulkin v. Shulkin v. Shulkin v. Shulkin v. Shulkin v. Shulkin v. Shulkin basically your client couldn't have had any obligations to supply something because the rating decision was made before he was asked for any information? Yes. And that's wrong, correct? I mean, there was no rating decision in June? No, the rating decision was in October. If you look at the third line from the bottom, on page 9, what does it refer to? Yes, it does say June, Your Honor, and that's not correct. And you made a legal argument based on the fact that there was a June 6, 2002 rating decision. Look at your brief. Look at the bottom of page 9 from your brief. That's one of your three arguments. Yes, Your Honor, but at page 1, I'm trying to point out to the presiding judges that Mr. Carpenter made an argument below based on a misstatement in the record. He was a CAVC in its opinion, and yet you maintain the same argument in your brief here. I had to call for the whole record from the CAVC to determine that there was no such thing as a June 6, 2002 rating decision. Your Honor, I believe in the appendix at page 180, it does refer to the correct date in my brief below. At page 180 of the brief, you refer to a June 6, 2002 rating decision, and you cite... Oh, I'm sorry. I see it in the... Oh, I'm sorry. I mean, I got the very pages from the record that you cited in the CAVC, and it said it's an October rating decision. So may I fairly assume that the arguments that you made in your blue brief based on the existence of an October rating decision, you're now waving off? You made an argument that you see your blue brief. You made an argument that it was pertinent that you win in this case because there wasn't a rating decision in June. No, the correct date of the rating decision is October. Right, but what about the argument you make in your blue brief based on the earlier wrong rating decision? Well, the citation at the end of page 9 refers to the wrong date. That is correct. But there never has been a June 6 rating decision. No, Your Honor. But in my brief... You argued to the CAVC that there had been a June 6 rating, and they told you you were wrong. I did get those dates incorrect, Your Honor. I'm just trying to point out to you, Mr. Carpenter, that you made a legal argument based on the existence of a June 2 rating. You knew that there was no such thing as a June 2 rating. Well, I did not intentionally make the argument knowing that it was not correct. You represented, Mr. Carpenter, to the CAVC in a letter dated November 23, 2011, that the claim was denied in October, not in June. That's correct, Your Honor. And yet you maintained that there was a rating decision denying him in June. No, and that is a mistake, Your Honor. That is an incorrect statement. The decision was October. But when that was called out to you by the CAVC in its opinion, why did you make the same mistake in your blue brief? I can't... And it was your lead argument on page 9 in your brief. So it was in October, but can we proceed? Yes. We realize it was... Okay, so we're talking about the October 2002 decision. Of course. And as long as we are correcting my mistakes, Your Honor, I did make another mistake. And that is that I cited, or I referred to in my brief at page 6, 8, 9, and 10 to the fact that there was no notice to Mr. Lloyd by the VA of a request for information. And that is a misstatement of fact. A rather crucial one. Well, if you assume that it applies retroactively, it is a crucial one. If it does not apply retroactively, then it is not a crucial one. What was the date of the information request? In the October 2008, October 28, 2002 rating decision that begins at Appendix 30, at Appendix 31, it notes that on September 16, 2002, the VA had requested additional information and specifically requested a complete detailed description of the specific traumatic incidents. Do I understand right that it wasn't until many years later that Mr. Lloyd mentioned, was it Bien Hoa? That's right. Is that the way to pronounce it? Yeah, Benoit, I believe is the correct pronunciation. Benoit, sorry. But not back in 2002? No, Your Honor, he did not. So the situation as I understand it that's presented for decision is whether on the assumption that the new 156C2 doesn't actually apply to this case because that would make it retroactive and at least the Veterans Court did not think it was retroactive. In this case, I gather more recently, it seems to have done just the opposite. But in this case, it didn't. Then the question is whether the regulations in place putting aside the amendment to 156C2 were such as to allow the VA to say, if we got new service records that change our assessment, it doesn't come within the exception to backdating the opening claim where the reason we didn't get them before was that you didn't answer a question to give us information that was necessary for us to go look for those. Well, actually, I don't – the regulation is not phrased in terms of you did not provide. It's that you failed – or excuse me, that you did not respond. I'm ignoring the new 156C2. I gather the government's argument is ignoring that. Nevertheless, under the preexisting 156, that exception doesn't apply, didn't apply, maybe because of 159, due to cooperate. I think that's the principal basis, but they can explain this more. Nevertheless, you don't get the benefit of this special exception to the backdating rule if the reason that we couldn't get those service records is that we had no idea what to ask for because you didn't give us the information. Why is that wrong? Well, this case I believe is a perfect example, Your Honor. The VA collected some of the veteran service records, but they didn't collect all of the veteran service records. The veteran service records that they collected – Do I understand this right? The new service records that made a difference were records that simply said here's what was going on in Bien Hoa. In Bien Hoa. In Bien Hoa. That his unit was subject to mortar and rocket attacks. That's right, but all they needed to know was that that was where he was, and then they looked up in general Vietnam military records. That's what was happening there then. Right. Right. But they didn't know, even though they asked for more information in September of 2002, they didn't know in October of 2002 that they should even look for those records. They're not kind of records specific to him, just you tell us where you were at this time, then we can figure out what was happening there then. Well, Your Honor, I'm not sure it's quite as simple as that. This has to do with whether or not there was a basis to corroborate the stressor. That is a provision under 3.304F. That provision was not considered by the VA in its decision in 2002. All the VA considered in 2002 was whether or not Mr. Lloyd was or wasn't a combat veteran and said, based upon your service records, you are not in combat. Your medals don't arise to give you the benefit of the combat presumption. But he hadn't been given it. He'd been asked for stressor information and he hadn't given it. That's correct, Your Honor. But the key here is that in 2002, there was no sanction for that failure to provide that was expressly provided. Your argument is that 159 doesn't have a sanction. That's correct. And the government is arguing and the CABC cited a couple of cases in which the veteran's failure to give sufficient information to find something was taxed against him. Yes. In those cases. And so that's the penalty. And we believe— Those cases demonstrate the penalty for failure to comply with 159. And the imposition of a penalty by inference, which is what the government is trying to do in retrospect. The cases that were cited, say, the cases that were cited by the CABC and cited in the government's brief. Right. And those cases, we believe, are inconsistent with the plain language of 3.156c, the prior version that made no such reference. Inconsistent with or providing the same kind of remedy that 156c2 does provide? Why are the cases inconsistent? 156c2 says that if you didn't give us enough information for us to find what we should have found, then you're not going to get the benefit of the earlier effective date under 156. Right. And the effect of the two cases that were cited below and cited by the government briefs are a similar effect happens to the veteran because those cases were comparing the duty to assist on behalf of the secretary compared to what duty the veteran had. Right. And presumably the duty the veteran had in those cases were 159 because that was the only extant expression of any duty to supply specific information. And those two cases, the veteran lost, which was the same penalty, which is you don't get the earlier effective date. So I don't see how they're inconsistent. Well, I believe they're inconsistent, Your Honor, because 3.156c was created as a remedy, as a remedial regulation, that when the VA failed to do something specifically related to the collection of service department records, where the information was in the service department records, that would have substantiated the claim. Let me ask the question to you this way, Mr. Kaufman. What we're talking about, led in from Judge Toronto, is what is viewed as the alternative ground of the holding of the CAVC. The government maintains that the CAVC did not rely on 156c2. You disagree with that. You think they did. Yes. So if you're right and they relied on 156c2 and shouldn't have, then their decision can only be sustained if there was an alternative ground, right? The alternative ground would be this thing that Judge Toronto referred to. What I'm trying to get at is the so-called alternative ground. Yes. That is to say the veteran's pre-156c2 obligation to help and didn't do it. That was neither briefed nor argued at the BVA or at the CAVC. The alternative argument. Yes. Yes. It was not raised at all. No. And it is fact-driven, isn't it not? I mean, if you assume there was some kind of an obligation on behalf of the veteran to do something, even though maybe there was no benefit of doing it, it's fact-driven. Then why should the CAVC get off making those sub-soletio fact findings in the first instance? Why shouldn't the case go back to the BVA and say, hey, wait a second. You, the BVA, applied 156c2 clear as a bell and shouldn't have, A. And B, maybe there's an alternative here. Maybe there's not. Adjudicate it. I think that's reasonable, Your Honor. Frankly, it did not occur to me to look at it quite through that prism. But I think looking at it from that perspective, if you're going to rely upon that alternative theory, then there has to be a decision about those facts in the first instance. And I do not believe that there was any such factual determination made by the board. The argument was made in the case that the CAVC held that 156c2 is not retroactive, at least as to pending claims. There's a debate about whether or not this was a new regulation or whether it's codified existing practice. And there seems to be some difference of opinion on that topic. And I couldn't get to the bottom of it. As a practitioner in this area, I was unaware under the prior version that there were these policies. These policies were not clarified until 2005 when the VA published and explained that it needed to, if you will, tinker with the wording and substantially expand this regulation into multiple subsections so that the wording of the intent was clear. And what seems to be clear from that intent is that they wish this to be a remedial action, that if the veteran was, the original adjudication suffered from an administrative error in the failure to get the service records, then that error should entitle to reconsideration. Reconsideration, and if so, effective date as the original filing. But if the veteran had not given the secretary sufficient information for it to, in essence, cure the mistake of the record not being filled, then there's a tax to the veteran. Correct. The language of failure and remedial, I guess that language feels to me like it more helps the government than it helps you. The point of this special exception to the usual effective date rule for reopening or something like that is that these records were already in the possession of the government properly defined, and that if you call that, then they somehow should have gotten them. And so the remedy is, okay, you get to backdate your claim. But if you're in a circumstance where it can't meaningfully be said that the VA failed to find something because there was just go find a needle in a haystack instruction despite a request for identification of the stressor, that doesn't feel like a failure to me or a remedy for a failure to give the backdating. Well, and I think that's where the explanation in the Federal Register of why they did this becomes crucial to this ultimate determination. Maybe I missed something. In both the notice of proposed rulemaking and in the rulemaking, I guess I thought it was not terribly clear whether the VA thought that it was, or I guess we don't say VBA anymore, right? VA thought that it was putting into words in the CFR something that already pretty much existed or whether it was changing a preexisting provision that was too veteran friendly by giving the benefit of backdating even if it was the veteran's fault for the failure to find, or the non-finding of the earlier records. Is there anything more that we know beyond this in the Federal Register about whether 156C2 was codifying a preexisting practice or whether it was meant to change a preexisting practice? The only thing that I'm aware of is what was in the Federal Register when they proposed to amend it. The purpose of this rule is to clarify longstanding VA rules. But, unfortunately, it doesn't identify what those longstanding rules were and particularly when you compare it to the language of the prior version. For example, in the prior version it said either before or after the decision. Mr. Carpenter, the government at the end of its brief here says there is an independent ground rule which your client can't prevail. I'm sorry? The government at the tag end of its red brief here says there is an alternative ground on which your client cannot prevail, which is to say your client's diagnosis of PTSD comes at a later date and that you can't get an effective date earlier than your diagnosis. And that's the case law. The case law says quite clearly that you can't get an effective date earlier than your diagnosis. No, there is a case that addresses that specific question under the facts of that particular case based upon the way in which that issue was presented. The difference here is... What case is that? Young. Young, yes. Thank you. Sorry to say blue ball, but it's not. It's young. And to your point, Judge Toronto, it is critical to understand that you don't get an earlier effective date. You merely get the reconsideration of your original claim, which means that it has to be re-adjudicated. It has to be decided anew based upon what is now in the record. And that then goes to Judge Clevenger's point about the question of diagnosis and the question of the VA's duty to assist in developing evidence about that diagnosis. One of the criticisms in this case is that no examination was ordered. The VA made no effort to determine whether or not, at the time of the 2002 decision, Mr. Lloyd did or did not suffer from post-traumatic stress disorder. Therefore, he needs to be... You would argue that was a failure of the duty to assist to give the exam at that point in time. That's correct. But this is not a duty to assist case. It's not being pitched as a failure of the secretary's duty to assist. No, but the secretary's hail Mary at the end of their brief for a harmless error claim is not supported by the fact that what you do under this regulation is you reconsider the original claim. You consider it anew based upon evidence that is now in the record, which could include presenting evidence for a retrospective evaluation to determine whether or not the veteran did or did not have symptoms and manifestations of post-traumatic stress disorder at the time of his original claim up until the current effective date. Connected to the stressor. In order for your client to prevail, your client will have to show that the stressor is connected to the PTSD, that he has PTSD because of stressor from these particular facts, and he had them as of the effective date. I'm not sure that's correct, Your Honor. I think your statement is overly broad. If you take your case and line it up and say what happens if you were to have another hearing, your client wants to be able to... He has to establish, right, that his PTSD stressor related is connected to the effective date he's seeking. With respect, Your Honor, he has to be given the opportunity for reconsideration first. What I'm trying to get at is if he got reconsideration, what would you show in order to get entitlement to the earlier effective date? We would present lay evidence of his symptoms and manifestation between the date of his claim, and I believe it's July of 2002, and the date of his current effective date. The establishment of the relationship of the stressor to the PTSD has already been conceded by the government in its 2007, I believe, decision, in which they made the grant based upon the Supplemental Service Department records concerning the rocket and mortar attacks at Benoit. So on that 2007 decision, would you prevail if it were enough to show that there was a failure of the duty to assist in 2002? Is that enough? Well, yes, Your Honor, because then he would be entitled to present the evidence or require the VA to develop the evidence, i.e. to obtain an examination retrospectively about what his symptoms and manifestations were or were not from the time of his claim in July of 2002 until the current effective date. Okay, so let's hear from the government, and we'll save you a rebuttal, Mr. Carpenter. Thank you, Your Honor. Ms. Walker. Good morning. May it please the Court. This Court should affirm the decision of the Veterans Court. I'm sorry, Ms. Edlow. Okay, start again. May it please the Court. This Court should affirm the decision of the Veterans Court. Mr. Lloyd should not benefit from his repeated failures to participate in the claims process. As the Veterans Court correctly held, Mr. Lloyd, as of the appointment, had a responsibility to present and support his claim under 38 U.S.C. 5107A. And particularly in PTSD claims under 38 CFR 3.340F, the Veteran must submit credible evidence showing that his claimed in-service stressor occurred. He must claim an in-service stressor. In addition, under 38 CFR 3.159C2, the Veteran must provide sufficient information for the records custodian to conduct a search of the cooperative records. That's where we get to the duty to assist. The information apparently was not provided. Everyone knew it was the VA, knew that that was needed, and there was no examination ordered. Here, Your Honor, two points on that. First, Mr. Lloyd has waived any kind of duty to assist argument relating to his original 2002 claim. That claim is final. There was no appeal. Any kind of duty to assist argument should have been raised then, because it was not, has been waived. But second, the regulations specifically provide that the Veteran is supposed to identify the stressor first, before he's given a medical exam and before the VA can then go search for records to corroborate the stressor. Can I back you up? I mean, you cited 5107A, duty, and you cited 159C2, which are the legal data points for your argument that he had the obligation to respond more fully. Mr. Carpenter's argument is that there's no penalty. He says there's nothing in the law that says what happens if the Veteran didn't satisfy his 159C2 obligation. I think the clear penalty is that he's not given benefits. Well, is there a case? I went under 159C2 looking for cases. I couldn't find any cases that said that. Can you give me an example of where a Veteran has lost the claim he's trying to achieve pre-156C2? Certainly. The 3.304F, which provides the three elements that a claimant must meet to get an award for service connection for PTSD, if they don't meet any of those criteria, then they're not going to get a claim for benefits. And here, one of those criteria is a claimed in-service stressor and credible evidence supporting that claimed in-service stressor. He has the claim. The department now agrees that he has a stressor that is legit and it's connected to his PTSD. In fact, he's receiving benefits. Yes. This is an earlier effective date case. Yes. And Mr. Carpenter wants to use the regulation that was promulgated that creates an exception to the rule that you don't normally get to go back, which you do when there was a record the government could have got. And he's saying he can't be charged with stumbling over 156C2. Do you agree with that? 156C2 cannot be applied to his case? No, Your Honor. Actually, 156C2 can be applied to his case. Did you argue that in your brief? We didn't. He raised the idea of retroactivity in his reply brief. So, first of all, that argument is waived because it wasn't in his brief. But the Veterans Court agreed that 156C2 was not retroactive. He doesn't need to raise that argument. You could have argued in response that the judgment of the Veterans Court is correct, though not on the ground that the Veterans Court stated. Namely, you could have said 156C2 really is retroactive. Arguably, yes, Your Honor. We could have done that. The Veterans Court specifically noted in its opinion that Mr. Lloyd was not arguing about the retroactivity of the statute of the regulation, and so it did not specifically reach that argument as well. It stated in its opinion, however, that the court had held that the regulation was not retroactive. There's a sentence in the opinion that says that. Right. The Veterans Court held that. And so my question is, why aren't we bound to agree with the CAVC, which has held that the regulation is not retroactive? The regulation is not retroactive here because the regulation was amended. It does not have a retroactive application here, excuse me. Because the regulation was amended in 2006, and Mr. Lloyd filed the present application to reopen in 2008. And this court is retroactive. You're arguing that his claim wasn't pending at the time the regulation was enacted. That's correct. And that's the argument that you made below that the CAVC didn't even pay attention to. That's correct, Your Honor. They didn't really need to. They said that he always had the duty to present and support his claim. So they didn't really need to reach that argument. What was the basis for the CAVC decision? The basis for the decision was that Mr. Lloyd had the responsibility to present and support his claim under 5107A, and he failed to do so. Under 159, you mean? Under the statute, under 38 U.S.C. They didn't cite the statute, though? They cited two cases? I believe they did cite the statute, Your Honor. This is all on the crucial page four that you cite repeatedly. I realize there aren't that many pages. There aren't that many pages, yes. It is on appendix four. Yes. It's 5107A, I correct myself. So under the case law, this question of whether or not a veteran has satisfied the veteran's obligation to help comes up in duty to assist cases, where there's been measure back and forth. This particular alternative ground that you just mentioned was not briefed or argued to the CAVC, correct? The duty, yes, correct. Yes, this alternative ground wasn't argued. It was not the, and am I correct that the BVA in this case clearly applied 156C2? Yes. And that was a mistake if the statute, if it's not retroactive? If there's the holding that the statute should not be applied to conduct the happenings. To reopen claims. Correct. But I would note that this court has held that reopened claims are treated as new claims. And therefore, under, that's Cook in 2002, and then Sims versus Shinseki, which is a 2009 decision. And because they should be treated as new claims, the regulations that are in effect at the time the individual files a new claim should govern the result of the. Are you familiar with the case law at the CAVC since this case dealing with the question of whether or not 156C2 is retroactive, and if so, to what? I am not. So you don't know what the practice is at the CAVC, whether they bought your argument that you made below in this case, but didn't make here? I don't know since this case, Your Honor. I know that the one there's Klein versus Sinseki below, which we briefed in our brief below before the CAVC. Should I be troubled that the CAVC made a decision based on an issue that wasn't briefed or argued to it? And it wasn't briefed or argued to the BVA? No, Your Honor, because the facts of the matter are the same regardless. The court didn't do any new fact finding or anything like that in order to reach this alternative ground. They relied on the same facts, which is very simply that Mr. Lloyd did not identify a stressor until 2008. So therefore, they were simply applying. But what you're trying to do is to measure what his duty was at the time that the VA was asking for information from him. And part of his contention is that you were asking for information from me after you denied me a medical exam. So his view is that in the mix, that the fact that he was denied a medical exam somehow diminishes the significance of his failure to give the specific information. It doesn't, Your Honor. The secretary missed the chance to pick up something more to tell him more about what it is he should be giving. It doesn't, Your Honor. Again, that argument's been waived. That's a duty to assist claim. But even if it hadn't, he's not entitled to a medical exam until he identifies a stressor. And that's what this court said in Sanchez-Navarro. I'm not certain what the law was in 2002. Navarro, I don't know for sure whether the secretary was refusing to give medical exams in PTSD cases unless there were stressor evidence in 2002. Do you know the answer to that? I don't know the answer to that, Your Honor. And it would be material, would it not, if there were going to be another hearing? If this case was remanded and for him to have a new medical exam, it would not be material. It would not actually change the outcome of this case because even if this case— The first argument would be, first off, to decide whether or not 156C2 is or is not retroactive to this case, which isn't being adjudicated here because it hasn't been briefed. Because if it is not retroactive, that's one answer. If it is retroactive, Mr. Cartman's client is going to lose. If it's not retroactive, then the question is, well, how do you measure up the size of his obligation under 159 and 15107? What was the size of his obligation in 2002, in the summer of 2002? He always had the obligation to identify his claimed stressor, always, under 3.304F. Those are the three elements for a PTSD claim, and he always had the obligation to identify his stressor. He failed to do that until 2008. So even if this case was sent back, even if he got the medical exam, even if the doctor then said, yes, Mr. Lloyd had PTSD, arguably it could go back to 2002, the result, the ultimate outcome of this case, the effective date he wants back to 2002, would not happen. Because the effective date is the later of the date the original claim was filed, if it's been reconsidered, as he's asking for, and the date the entitlement arose. The entitlement for Mr. Lloyd didn't arise, at least until 2006, until he was given the exam, and arguably until 2008, when he actually identified the stressor. What happens if, in an additional hearing, Mr. Carpenter is able to produce for his client a statement by a VA doctor, that he has analyzed the record here, and he's analyzed what were the stated conditions of his client at an earlier period of time, and to say, I believe that you suffered these events in service, that they were a stressor for the PTSD you have now, and you had those at an earlier time. I believe that your PTSD stressor-related was existing at the time you filed your claim in 2002. If he produced that, and that's all as a result of not having been 56C2'd, why wouldn't he then, under 156A, get his earlier effective date as the date of the filing? Because his date of entitlement would still be the date when all those three elements were met under 38 CFR 3.0. But he's asking for a retroactive, if you will, diagnosis of PTSD, stressor-related, back to the date of the date he filed his claim. Yes, but he still hasn't claimed his stressor until 2008, and that is one of the elements of the PTSD service connection. But PTSD, you're saying, was not claimed in 2002? He claimed that he had PTSD. He didn't identify his stressor, and that is one of the elements of... Where are the presumptions here? Here we have a veteran, three years in the military, including service in Vietnam, and then some years later, files a claim for certain consequences of that service. The question which arises, in fact, whether this isn't after it comes out with time, apparently the symptoms are manifested or enlarged, I can't tell yet from the record before us, but several years later, the question is reopened with a VA. So it obviously didn't go away. And where, at what stage, after we work our way through the addition of additional regulations, which we are told reflect some sort of prior practice, which is now being elaborated or exposed, or the consequences perhaps throughout those who served in that period are becoming more manifest. I'm looking for some kind of presumption which might impose some sort of burden to elaborate at a stage when, if all was needed, was to invite the military to see what happened in that period of service in Vietnam. Certainly it was all over the press and everything else. Well, where do the burdens lie now that we have eventually crossed a lot of bridges, determined that there was indeed, there is indeed PTSD, there is indeed a certain retroactivity, and we're just trying to figure out what's fair in light of the complications, the complexities of all of these. And this is where it's troubling when there was, in fact, it was brought to the VA's attention in 2002 that there are problems to be resolved. It takes a long time to resolve them. But what's fair in terms of the threshold? I came out of time. May I respond? Here, Mr. Lloyd was treated fairly. The only thing Mr. Lloyd was required to do in 2002 was to tell the Veterans Administration what his stressor was, what event in service is causing him to have flashbacks or symptoms of PTSD. He didn't do that. The Veterans Administration repeatedly told him that he needed to do that, and that was his obligation under 3.304F and under 3.159C. They sent him a letter. He filed his claim in June 2002. They sent him a letter in September 2002 saying, if you don't give us this information, we can't do any more with your claim. You have to have a diagnosis, which you didn't have then, but also you need to tell us what your in-service stressor is. He didn't do that. When the regional office denied his claim and that became final, again, the regional office said, you need to give us the information about your stressor, and he did not do that. Again, in 2006, when he filed his first application to reopen the claim and actually had the diagnosis for PTSD, he was told again by the Veterans Administration, you need to tell us what your stressor is. He didn't do it, and again, the RO denied his claim saying, again, you didn't tell us what your stressor is. It only comes back in 2008 when he finally identified his stressor, and that was what allowed the VA to go and confirm that he did actually suffer. His unit was in Bien Hoa at the time. So Mr. Lloyd was treated fairly here. The VA, PTSD is such a personal thing. One person's experience being subject to rocket and mortar attacks may give them PTSD. Another person might be totally fine. That's why VA needs the veteran to come on board and say what the stressor is, and then the VA can go and cooperate. Here, that just did not happen. Okay. Thank you, Ms. Edmonds. Okay, Mr. Carpenter, you have your rebuttal time. The Veterans Court tried to do a workaround and say that, well, under the statute, under 5107, you have to substantiate your claim. This is not substantiating a claim. This is not the original adjudication. This is reconsideration of that original claim. That is the clear longstanding policy of the VA in the creation of 3.156C, to permit reconsideration when there are service department records that are recovered later that permit an award. And it allows for reconsideration, which then triggers anew the duty to assist. What the VA has done, what the court below did, was to say you don't get the duty to assist here because you didn't substantiate your claim. We're not arguing that he substantiated his claim in 2002. He substantiated his claim in 2007 and was granted the benefit. This regulation then provides for a mechanism for the reconsideration of the original claim. For those veterans going forward, they are going to have to provide that information or they don't get reconsideration. For the hundreds, if not thousands, of veterans who didn't know they had an obligation, it is patently unreasonable to impose retroactively such a sanction without express authority. The government offered you no authority for a sanction. There is no sanction authority in the statute. There is no sanction authority in any VA regulation until we get to this amendment. But in Mr. Lloyd's case in 2002, he was asked for substantiation. He was. Doesn't that distinguish this case? No, Your Honor, because at that time the VA correctly denied not because they didn't have the information to substantiate it. But let's look at what the VA also didn't do. They never gave him an exam. The government gets up there and talks to you about how you're required to corroborate your stressor, the very specific information you're asked for, the stressor, under a specific VA regulation. And that regulation could have been applied but was not. Only the combat status was considered in 2002. 3.304F was not considered. If there was an examination, what would the examiner's first question have been? Why do you think you have PTSD? What happened in the service? And where did it happen? And if the examiner wrote down, well, I was at Benoit during these rocket and mortar attacks, and he explained it then, not when he was made the request, but during the VA examination, that's part of the VA's duty to assist. That then is recorded in the record. But we're not talking about the original adjudication. We're talking about a reconsideration of that original claim based upon the VA's receipt of service department records. The facts are not in dispute here. The VA got service records after the denials in 2002 and 2005. When they got the records in 2007, they ultimately made the award. This is a regulation that is calculated to assist veterans in getting an opportunity to demonstrate an effective date from the date of the original claim. And that's what Mr. Lloyd was deprived of. He was deprived of that by the board because they used their now get-out-of-jail-free card under this regulation and said you didn't provide us the information. Can I just add something to this? I'm looking at the, this is Joint Appendix 31. It's the October 28, 2002 initial reading. At 31? Yes, at the very bottom of Appendix 31. This is the initial 2002 denial. And the last sentence, which starts on the third line from the bottom and carries over. We requested medical evidence showing treatment for PTSD along with a complete detailed description of the specific traumatic incidents which produced the stress that resulted in your claim. And they don't find one. I'm sorry? And the office did not find that established. Well, there was no response to that request. That is correct, Your Honor. But isn't that the problem? No, Your Honor, because there was no requirement to do that under the provisions of 3.156C as it existed in 2002. That's all right. So the federal regulations were not in the forefront of Mr. Lloyd's consciousness, but here is a direct request for exactly what would have solved the problem. And if there was a statute, Your Honor, or a regulation that said, as the now amended regulation says, if you fail to provide that, then you will not get reconsideration of your claim at a later date, then you're right. Mr. Lloyd would have to look. But there was a regulation that did require him to give specific stressor information. That's 3.159, correct? Let's put that on the table. That's correct, Your Honor. With no sanctions. No, that regulation was actually, would be the basis for the request, was we want you to give us this information. That would be correct, Your Honor. And your case hinges on the fact that there was no penalty for the breach of the 3.159 obligation. That's correct. I just don't want to make it clear. Yes, yes. And with no penalty provision in that, it is... Well, was it harlatory? What was the purpose of 3.159? To allow the denial of a claim, Your Honor. And that's what happened in 2002. They denied the claim because he didn't come forward with the information requested. Well, they didn't need that to deny the claim. If he didn't get the information, he wouldn't have satisfied the requirement for the regulation. That's right. And then they denied the claim. They later granted the claim, and this regulation then, 3.156c, comes into play. Because when you get a later grant, based upon the VA's later receipt of service department records, you are given an opportunity for reconsideration. And there was, at the time, in 2002, no sanction provision in 3.156c any more than there was in 3.159. And to impose, after the fact, a sanction provision that precludes the operation of this regulation is totally inconsistent with what is supposed to be a veteran-friendly circumstance. The government concedes that post-traumatic stress disorder is a severe psychiatric disability. We are talking about a person who was ultimately granted the benefit and granted a total rating because he was totally disabled from that condition. One of the symptoms of post-traumatic stress disorder is amnesia, the inability to recall. And now we're going to penalize the veteran for the very thing that is a symptom of the disability that we granted the benefit for. But that's not what's going on. If you want to use the word penalize, then what he's being penalized for is not responding to the specific request for information. And is a psychiatrically disabled person. Is there any evidence that he couldn't have responded to the September request for information, September 2002? No, we are not. But what I'm suggesting is that we have focused on what happens in the adjudication of a claim as a justification for denial and transplanted that onto the provisions of this regulation that didn't have a sanction provision that precluded the right to reconsideration. The mandatory language of the prior version of 3.156c said shall. It was mandatory and not permissive. The VA shall reconsider, which is now what C1 says in the current version. And it's the interplay between C1 and C2 that allows for C1 not to be operative. But those provisions didn't exist in either 3.156c in 2002 or exist in 3.159. Now clearly had the fact, or excuse me, had the regulation been in place and his original application had been made after this regulation went into effect, then he's clearly out of luck. The question in this case is, was this provision applicable? It was not applicable, and the alternative method or ground for making it applicable to sanction him was through the back door of 3.159, for which there was no discussion by the board and no fact finding by the board. Do you have any sense how many veterans' claims the current legal issue before us affect? That is, where the original claim was denied before the amendment of 3.156c2, and there's a question about whether the non-acquisition of the service records at that time was the result of an insufficient cooperation by the veteran. This is a substantial part of my practice. I work predominantly with psychiatrically disabled, predominantly with post-traumatic stress disorder. Up until the time of the amendment to 3.156c, reconsideration was not being afforded. When they amended it, it started to be afforded, but then in affording it, they had this escape clause, and there are tens of thousands of veterans who are affected by this that are still in a position in which they have cases that would have entitled them to at least a reconsideration of their original claim. Not necessarily a guarantee that they would be awarded the effective date of their original claim, but the opportunity to represent that claim. All of which under 3.156c are designed to get an earlier effective date. That's the ultimate goal. That's all these cases that say. That's correct. And there have to be lots of them because of the fact that a veteran who filed a PTSD claim didn't quite understand what he was supposed to do. Got turned down. It was final. Didn't do anything about it. Yes. Went through a considerable period of time. Finally understood what it was he was supposed to do and came in and said, oh my god, I forgot to tell you. When I was at this town, I was there where the Agent Orange was. And that's a take it to the paymaster claim. About pro se veterans represented by non-attorneys who simply did not understand the law. And we're now proposing by the decision in this case to punish them because they didn't understand the law. That can't possibly be the intent of this regulation. It depends, doesn't it, Mr. Carpenter, on whether or not the government is correct and the CABC is correct is that there was a pre-existing penalty for not doing what your client didn't do here. And the only way that that alternative ground can be viable is if this case is remanded to give the board an opportunity to address that issue. Well, it just seemed to me, I mean, I could smell right away that there were lots and lots of cases that were like this. And it seemed odd to me that we would be put in a position where we would be asked to affirm the board on an alternative ground that it brought up on its own motion without briefing an argument. That is 180 degrees away from what the BVA did. And now there seems to be some question as to whether or not the CABC is giving retroactive effect to reopen cases as opposed to cases that had pending claims. Yes. And so I don't know what that aspect is. Okay. Can we move on? I think we've heard the critical issues. Thank you both. The case is taken under submission. Okay, that concludes the argument. All rise. Can't get up until you whack it, you know. On record, adjourned until tomorrow morning. It's at o'clock a.m. I'm sorry to be a little rough on you, Mr. Carpenter, but do check in and brief. That is a mistake, and you were called out on that. The CABC, in their opinion. And I was. And it's the date of the claim is what the problem was. I understand that. Thank you.